**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KATIE PENCE, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | |
| **Plaintiff,** | Civil Action No. 1:26-cv-6499 |
| v. | **CLASS ACTION COMPLAINT** |
| THERMOS, L.L.C., | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Plaintiff Katie Pence (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

1.      This action seeks to remedy the deceptive and/ or illegal business practices of Thermos, L.L.C. (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Thermos Stainless King 3000 and 3020 Food Jars and Thermos Sportsman 3010 Food & Beverage Bottles (hereinafter the "Recalled Products").

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Recalled Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that if perishable food or beverages are stored in the container for an extended period of time, the stopper can forcefully eject when opened, which can result in serious impact injury and laceration hazards to the consumer.  The reason the stopper can forcefully eject

1

when opened is that the stopper does not contain a pressure release valve in its center (the "Defect").

3.      The recall follows 27 reports of the Recalled Products' stoppers ejecting with enough force to strike users, causing lacerations that required medical attention. Most alarming are three accounts of consumers being struck in the eye, resulting in permanent vision loss.[1]

4.      Consumers like Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from hidden dangers.

5.      Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the food and beverage container products they purchase will not contain, or risk containing, a defect that can cause serious injury.

6.      Unfortunately for consumers, like Plaintiff, the Recalled Products they purchased contained the Defect.

7.      In fact, Defendant recently conducted a product recall of 8.2 million of the Recalled Products on April 30, 2026[2] (the "Recall").

8.      The Recall is insufficient to compensate consumers such as Plaintiff for numerous reasons, including that it fails to offer any monetary relief to Plaintiff and Class Members who purchased the Recalled Products. Instead of providing a proper remedy, Defendant merely directs consumers to obtain a replacement stopper or return the Recalled Product to Defendant—a remedy that imposes burdens of identification, contact, and delay on consumers.

9.      Defendant is using a marketing and advertising campaign that omits the fact that the Recalled Products contain the Defect. This omission leads reasonable consumers to believe

---

[1] https://www.forbes.com/sites/forbes-personal-shopper/2026/05/04/thermos-recall/
[2] https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazards

they are not purchasing a product with a known Defect when in fact they are purchasing a product with that known Defect.

10. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe. Thus, reasonable consumers would not think that Defendant is omitting that the Recalled Products contain, or are at risk of containing, the Defect.

11. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Recalled Products do contain the Defect, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention the Defect anywhere on the Recalled Products' packaging or labeling.

12. Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Recalled Products when they purchased them.

13. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received were food and beverage container products that contained a known Defect that is potentially harmful to consumers' health.

14. As set forth below, food and beverage container products containing the Defect, such as the Recalled Products, are in no way safe for use and are entirely worthless.

15. Alternatively, Plaintiff and Class Members paid a price premium for the Recalled Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Recalled Products' labels. Given that Plaintiff and Class Members paid a premium for the Recalled Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

3

16.     Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Recalled Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

17.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing food product containers for many years, including producing and manufacturing the Recalled Products.

18.     Defendant is in the unique and superior position of knowing the materials used in the manufacturing of its products and possesses unique and superior knowledge regarding the manufacturing process of the Recalled Products and the risks associated with those processes, such as the risk associated with the Defect.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

19.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the safety of the Recalled Products.

20.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Recalled Products containing the Defect are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

21.     Consumers rely on marketing and packaging information in making purchasing decisions.

22.     By omitting that the Recalled Products included the Defect on the labels of the Recalled Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product with the Defect.

4

23. Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

24. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

25. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

    a. Paid a sum of money for Recalled Products that were not what Defendant represented;

    b. Paid a premium price for Recalled Products that were not what Defendant represented;

    c. Were deprived of the benefit of the bargain because the Recalled Products they purchased were different from what Defendant warranted;

    d. Were deprived of the benefit of the bargain because the Recalled Products they purchased had less value than what Defendant represented; and

    e. Were denied the benefit of the properties of the Recalled Products Defendant promised.

26. Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount for the Recalled Products they purchased and, consequently, Plaintiff and the Class Members

5

would not have been willing to purchase the Recalled Products.

27. Plaintiff and the Class Members paid for Recalled Products that do not contain the Defect. Since the Recalled Products do indeed contain the Defect, the Recalled Products Plaintiff and the Class Members received were worth less than the Recalled Products for which they paid.

28. Plaintiff and the Class Members all paid money for the Recalled Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Recalled Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Recalled Products than they would have had they known the truth about the Recalled Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of Ohio and Defendant is a citizen of Illinois; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

30. This Court has personal jurisdiction over Defendant because Defendant is a citizen of Illinois, conducts and transacts business in the state of Illinois, contracts to supply goods within the state of Illinois, and supplies goods within the state of Illinois.

31. Venue is proper because Defendant's principal place of business is located in this District, and a substantial part of the events or omissions giving rise to the Class's claims occurred in this District.

## PARTIES

### Plaintiff

32.     Plaintiff Katie Pence is a citizen and resident of Hamilton County, Ohio. During the applicable statute of limitations period, Plaintiff purchased and used a Recalled Product.  More specifically, Plaintiff purchased the 24 oz. Stainless King Food Jar (Model SK3020) at Walmart in Cincinnati, Ohio during the Class Period.

**Defendant**

33.     Defendant, Thermos LLC, is a Delaware corporation with its principal place of business located in Schaumburg, Illinois.

34.     Defendant manufactures, markets, advertises, and distributes the Recalled Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Recalled Products.

## CLASS ALLEGATIONS

35.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

36.     The Class is defined as all consumers who purchased the Recalled Products in the United States at any time during the Class Period.

37.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Recalled Products in Ohio at any time during the Class Period:

> **Ohio Subclass:** All consumers who purchased the Recalled Products in the state of Ohio at any time during the Class Period (the "Ohio Subclass").

38. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

39. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

40. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Recalled Products;

    b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Recalled Products;

    c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Recalled Products;

    d. Whether Defendant's false and misleading statements and omissions concerning its Recalled Products were likely to deceive the public; and

    e. Whether Plaintiff and the Class are entitled to money damages under the

same causes of action as the other Class Members.

41.    Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Recalled Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

42.    Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating their rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

43.    Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

44.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

     a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

     b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally

9

impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Recalled Products.

45. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### Breach of Express Warranty
**(On Behalf of Plaintiff and All Class Members)**

46. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

47. Defendant marketed and sold the Recalled Products into the stream of commerce with the intent that the Recalled Products would be purchased by Plaintiff and the Class.

48. Defendant expressly represented and warranted that the Recalled Products were safe for use by all persons.

49. Defendant made these express warranties regarding the Recalled Products' quality and fitness for use in writing on the Recalled Products' packaging and labels through its website, advertisements, and marketing materials. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Recalled Products.

50. Defendant's advertisements, warranties and representations were made in connection with the sale of the Recalled Products to Plaintiff and the Class. Plaintiff and the Class Members relied on Defendant's advertisements, warranties, and representations regarding the Recalled Products in deciding whether to purchase the Recalled Products.

51. Defendant's Recalled Products do not conform to Defendant's advertisements, warranties, and representations in that the Recalled Products are not safe.

52. Defendant was on notice of this breach, as is was aware of the Defect in the Recalled Products, as reflected in its own recall.

53. The inclusion of the Defect is material because the Recalled Products now presented a significant, unreasonable risk of physical harm. This risk renders the Recalled Products worthless or significantly less valuable when compared to a safe product of a similar

nature or purpose.

54.     Plaintiff and the Class would not have purchased the lesser value Recalled Products had they known of the risks of the Defect. Plaintiff and the Class Members purchased the Recalled Products due to the false or misleading representations and warranties and would not have purchased such Recalled Products if true facts had been disclosed.

55.     Privity exists because Defendant expressly warranted to Plaintiff and the Class Members through the warranting, packaging, marketing, and labeling that the Recalled Products were safe for ordinary use and failed to make any mention of the Defect. All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff and the other members of the Class.

56.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Recalled Products that were worth less than the price they paid, given the presence of the Defect.

57.     Plaintiff and the Class Members also would not have purchased the Recalled Products at all, had they known of the presence of the Defect, which does not conform to the products' labels, packaging, and advertising.

58.     Had Defendant properly designed, manufactured, or implemented a system in which Defendant's products had been properly examined and tested for the Defect prior to sale, Plaintiff would not have been injured and/or damaged as Plaintiff would not have purchased the Recalled Products.

59.     Plaintiff and the Class Members seek actual damages, attorneys' fees, costs, and any other just and proper relief available due to Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and All Class Members)**

60.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

61.     Substantial benefits have been conferred on Defendant by Plaintiff and the Class through purchase of the Recalled Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

62.     Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Recalled Products would have the qualities, characteristics, ingredients, and suitability for use, as represented and warranted by Defendant. As such, it would be unjust for Defendant to retain the benefit of the payments under the circumstances.

63.     Defendant's acceptance and retention of these benefits under the alleged circumstances is inequitable.

64.     Plaintiff and the Class are entitled to recover all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

65.     Plaintiff and the Class seek actual damages, injunctive relief, attorneys' fees, costs, and any other just and proper relief available.

**THIRD CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and All Class Members)**

66.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

67.     Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

68.     Defendant misrepresented material facts concerning the safety, suitability, and

quality of the Recalled Products, including that the Recalled Products were safe for ordinary use.

69. Defendant has no reasonable grounds for believing that its misrepresentations were true. Among other things, Defendant represented that the Recalled Products were of high quality and safe. Defendant knew or should have known but failed to disclose that, contrary to its representations, the Recalled Products contained the Defect.

70. Defendant made such misrepresentations with the intent to induce Plaintiff and Class members to rely on its misrepresentations and purchase Recalled Products containing the Defect.

71. Plaintiff and Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiffs and Class members purchased the Recalled Products containing the Defect.

72. As a direct and proximate consequence, Plaintiff and Class members suffered harm. Among other things, they would not have purchased Defendant's Recalled Products, or would have paid less had they known of the presence of the Defect.

73. Plaintiff and Class members are therefore entitled to damages and relief, as prayed for hereunder.

**FOURTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiff and All Class Members)**

74. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

75. Defendant is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiff and members of the Class.

76. At all times mentioned herein, Defendant manufactured or supplied the Recalled

Products and prior to the time the Recalled Products were purchased by Plaintiff and the Class, Defendant impliedly warranted to Plaintiff and Class Members that the Recalled Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Products' containers and labels.

77. Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Recalled Products.

78. The Recalled Products were not fit for their ordinary use and did not conform to Defendant's affirmations of fact and promises as they contained the Defect.

79. Defendant breached its implied warranties by selling Recalled Products that failed to conform to the promises or affirmations of fact made on the container or label as each product contained the Defect.

80. Defendant was on notice of its breach, as Defendant was aware of the risks of the Defect in the Recalled Products. Further, Defendant's awareness is demonstrated by the recall issued by Defendant. Had Defendant been unaware of such breach, Defendant would not have issued such a recall.

81. Privity exists because Defendant impliedly warranted to Plaintiff and the Class through their warranting, packaging, advertising, marketing, and labeling that the Recalled Products were suitable for use and failed to make any mention of the Defect.

82. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Recalled Products that are now worth less than the price they paid, given the presence of the Defect.

83. Plaintiff and the Class would not have purchased the Recalled Products at all, had they known of the Defect.

84.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available as a result of Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## FIFTH CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and All Class Members)

85.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

86.    Defendant produces and distributes Recalled products throughout the country.

87.    At all times relevant, Defendant had a duty to provide Plaintiff and the general public with a safe product.

88.    Defendant breached this duty by failing to ensure the safety of its Recalled Products and by selling a product that contained the Defect.

89.    As a result of Defendant's breach of its duty of care, Plaintiff was harmed in that she suffered economic injury and lost the benefit of the bargain relating to her purchase price of the Recalled Products.

90.    Defendant's breach of its duty caused Plaintiff's damages, both proximately and factually.

91.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available as a result of Defendant's negligence.

## SIXTH CAUSE OF ACTON
### Violation of The Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.02(A)
### (On Behalf of Plaintiff and the Ohio Subclass Members)

92.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

93.    The Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.02(A)

16

("OCSPA") provides: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

94. The OCSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A).

95. Defendant's sales of the Recalled Products were "consumer transactions" as defined by the OCSPA.

96. In the course of its business, Defendant made affirmative misrepresentations regarding the Recalled Products that were deceptive and/or unconscionable. Specifically, Defendant represented that the Recalled Products were suitable for ordinary use. Defendant, however, failed to disclose material facts, namely, that the Recalled Products contained the Defect. Defendant had a duty to disclose these material facts because the Recalled Products were unsafe and because Defendant made affirmative representations about the Recalled Products.

97. If Plaintiff had known that the Recalled Products contained the Defect, Plaintiff would not have purchased the Recalled Products.

98. Plaintiff and the Ohio Subclass members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Ohio Subclass members did not have access to Defendant's internal testing, internal testing equipment, internal policies or procedures, or any internal documents.

99. Defendant thus violated the OCSPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Recalled Products

were safe and suitable for ordinary use.

100. Defendant intentionally and knowingly misrepresented material facts regarding the Recalled Products with intent to mislead Plaintiff and the Ohio Subclass.

101. Defendant knew or should have known that its conduct violated the OCSPA.

102. Defendant owed Plaintiff and the Ohio Subclass a duty to disclose the true and unsafe nature of the Recalled Products.

103. Defendant's concealment of the true characteristics of the Recalled Products was material to Plaintiff and the Ohio Subclass.

104. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Ohio Subclass Class, about the true nature of the Recalled Products.

105. Defendant's violations present a continuing risk to Plaintiff, the Ohio Subclass, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

106. Plaintiff and the Ohio Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

107. As a direct and proximate result of Defendant's violations of the OCSPA, Plaintiff and the Ohio Subclass have suffered injury-in-fact and/or actual damage.

108. Pursuant to Ohio Rev. Code § 1345.09(A), Plaintiff and the Ohio Subclass seek monetary relief against Defendant to recover (1) actual economic damages or statutory damages; (2) an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; (3) reasonable attorney's fees and costs; and (4) punitive damages and/or any other relief which the court may

18

deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as a class representatives of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding monetary damages and treble damages;

(c) requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

(d) Awarding punitive damages;

(e) Awarding Plaintiff and Class and Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses;

(f) For an order of restitution and all other forms of equitable monetary relief; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: June 2, 2026

/s/Jeffrey S. Goldenberg
Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8297
Email: jgoldenberg@gs-legal.com

19

Charles E. Schaffer
LEVIN SEDRIN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pa. 19106
Telephone: (215) 592-1500 Email:
cschaffer@lfsblaw.com

*Counsel for Plaintiff and the Class*

20